Good morning your honors and may it please the court. My name is Lauren Clark and I represent Mr. Vasquez. This conviction in this case should be reversed for two reasons that both go to the heart of the case, that is Mr. Vasquez's testimony at trial. First, the district court erred by allowing defendant-specific security, that is the marshals escorting him from the way sitting with him while he testified. And then how close were they sitting? About 10 feet away your honor, according to the district court. But not at defense counsel table? No, they were not. Well, throughout the trial the marshals, in a typical trial, the marshals might sit at defense counsel table in a suit. They might sit behind counsel table, they might sit in the audience section watching trial, but they remain stationary throughout the trial. This was different in this case and there was not any reason in the record or any indication of why they were acting in such a different manner. Is this a common practice? No your honor, it's not, not at all. In fact, a couple of months later I had a trial where a client in custody testified and he walked across the courtroom by himself in front of the jury, sat and testified by himself in front of the jury, walked back to counsel table. The marshals were present in court wearing suits, sitting strategically placed for security purposes, but that's not something, I've never seen that happen before in this district and my co-counsel had been practicing at the time I think for 16 years at Federal Defenders and had never seen it. It was so uncommon that we objected and brought it to the court's attention. And what justification did the government give? The government provided no justification your honor. I read enough of the transcript that I was looking for, I didn't find it. What did I miss? Nothing your honor, there was no justification provided. The district court later opined that he, and this is I believe on page 90 of the record, 96 and 97 I believe, the district court later opined that he thought the marshal's policy was to always place themselves between the defendant and the jury. He thought that was common but it is never something that I have seen before. If the court is, I do have the exact site, it's between 96 and 97 is the ER site. 96 to the bottom of 96 to the top of 97. The problem here though with regard to this issue is that Mr. Vasquez is being accused of sneaking into the United States without permission and what's being conveyed to the jury here is that he's so dangerous that he can't even walk 20 feet to defense counsel table without law enforcement escorting him. So even if a jury were to believe his testimony they might think they should convict him anyway because he's so dangerous that he can't be trusted to walk by himself in a courtroom. Well it's not just danger, and I'm not suggesting that this other one's all that important, but it's not just danger it's risk of escape. Well sure your honor and I think that also goes straight to the heart of this that the jury had seen seven government witnesses, a parade of witnesses, coming into the courtroom unescorted, sitting by themselves while they testified, but all of that changed for Mr. Vasquez and because this was a defendant specific security concern and because the jury very well could have thought that he was such a flight risk and so dangerous that they would convict him even if they believed him because of this heightened security and there was absolutely no finding of need. The district court himself at sentencing, this is 129 of their records, said that Mr. Vasquez's prior convictions were quote a product of juvenile misbehavior. He had some theft convictions as a young man, otherwise just status-based offenses. So there's certainly no violent courtroom outbursts. There's nothing to indicate that this heightened security measure that was completely uncommon in our district should be employed. What's the standard by which we review the district judge allowing this to happen? It is abuse of discretion your honor, but I think under Hinkson the court can determine whether the district court even identified at the proper legal rule de novo and then determine if he... Wouldn't we have to conclude that was prejudicial? Not necessarily your honor. The government cited to a brief that says that unless it's inherently prejudicial that you should find prejudice. I think under this case we do have prejudice here as I already indicated, but because this is a defendant-specific security measure and not generalized courtroom security, it is one of those inherently prejudicial practices. What if we were to disagree on that and say it's not inherently prejudicial? Then are you maintaining that your client was actually prejudiced? Yes your honor. What was the actual prejudice? The actual prejudice your honor is that the jury had witnessed all of these government witnesses testifying without any type of added security measure, but they saw something a completely different scene when Mr. Vasquez testified. Now that Marshall is sitting next to him, as he stands from the jury stand, the Marshall stands. As he walks across the courtroom, the Marshall is trailing right behind him all in the courtroom. Mr. Vasquez, however, said that he didn't want to send the jury out so that for the nicety of having the defendant walk across the room unescorted. So this is prejudice to Mr. Vasquez because this happened in front of the jury and it could not be seen in any capacity as generalized courtroom security when the measure was so focused. I would like to turn to my second issue though with regard to the government impermissibly commenting on Mr. Vasquez's post-arrest silence. There was about 90 seconds from according to the dispatch tapes from when Mr. Vasquez entered the United States and when he was actually arrested. Most of that time he was running according to the testimony of the primary agent. Well it went back and forth between walking jogging and running depending on his report, his testimony, and on cross, but either way most of that time was not his interaction or it wasn't a 90-second interaction conversation with Agent Fudge. Instead most of that time was his coming into the United States. He had a couple of seconds where he managed to get out and being chased and then he was arrested. Agent Fudge then testified that he took him to the station and spent some time, I mean presumably some time, we didn't, there was not anything in the record to indicate how much time. But the questioning and the argument in closing was whether Mr. Vasquez ever said any of these things. Here's my problem and it reconceptualizes the case slightly and none of the briefs seem to pick up on it in the way that is now puzzling me. Ordinarily when we get these silence questions it is there's a crime that occurred or an alleged crime that may be or did or did not occur, the person is being questioned, pre-Miranda, post-Miranda, says things, doesn't say things, and we've got some fairly well-established rules, the boundary lines are a little fuzzy about what it can be used, when it can be used for but the ordinary case, the cops are not involved in the transactions that are part of the crime or the alleged crime. Here the exchange with Fudge really goes to whether or not this is a crime or not. So the testimony or not testimony, the saying something, I was being chased or not saying something like please arrest me, that all goes to the actual apprehension, the reason for the apprehension and so on. How do I account for that difference? Well your honor I think I have two reasons. First the difference between I want to be chased and I want to be arrested. I was chased and I want to be arrested. Yes your honor, that either way the defense at trial was that Mr. Vasquez didn't have the intent to enter, the specific intent to enter the United States free from official restraint. That's the argument of course. So whether he had said one thing or another, we're still going to the same basic defense of he was not trying to sneak past Border Patrol and the testimony said that he was compliant and went straight to Border Patrol and so I see that my time is running up. I would like to reserve a little bit. We'll let you get a chance to respond, so please go ahead. Thank you your honor, but then the second answer is this court has evaluated similar circumstances. I believe Lopez is the case where the defendant had a duress defense at trial and he had many interactions with law enforcement, some of them pre-arrest, some post-arrest and the government in that case commented did the defendant ever say that he was coming into the United States because of duress and he never said that and that this court found that even though some of that might have been permissible and some of that might not, because of the language of ever and never, the jury certainly would not have been able to understand the limitations of what was permissible and what wasn't permissible and so they still found doyle error because of the language ever and never and we have that exact language on page 102 of the record. Would it have been permissible for the prosecutor to say or to question and then bring out and then in summation say the only thing he ever said was I was being chased. Is that okay? Don't only suggest he never said anything else. I would still have an issue with the word only and because that still implies that he should have said something else and that would still be inferring that he remained still be an impermissible comment on his silence. Had the prosecutor just said he said he was chased now he's had more time and now he's saying giving more details to the chase and said something about the consistency of those two statements that would have been permissible commentary but the fact that instead he references silence repeatedly that's where we have the issue and that's where the prosecutor erred. Unless the court has questions I'd like to reserve the remainder of my time to rebut. We'll make sure you get enough time. Thank you your honor. May it please the court Daniel Zip on behalf of the United States. Your honor on on the first issue the district court was within its discretion. Your idea to have the marshal do this? No your honor the the marshals indicated to defense counsel that that they were going to escort the defendant up there and then they raised it with the court so the government United States was not involved. Were you the trial attorney? I was not no. Do you have any idea why the marshals thought that was appropriate in this case? It's not in the record your honor no. And you practice regularly in this court I assume? I do yes. And is this customary to do it this way? I was trying to think of that back here I've done a dozen or so trials I honestly can't remember when the defendant testifies where the marshals are I mean they're always wearing suits and do their best to sort of blend in with the rest of the courtroom. Were the marshals wearing suits this time too? As far as I know that again is not in the record but I've never seen them not wearing suits in the courtroom. What obligation does a trial judge have if any to when the record and let each side weigh in on what's appropriate? Your honor I think at the more extreme levels when we're talking about shackling or the use of prison clothes the law is clear that the court has to make a factual finding that this is there's this is the least restrictive means possible and it's compelling interest in this. In Morgan v. Iceboro the the court explicitly held that when it's a lesser form of security like the one here that fact-finding is not required on the record and in this case the court frankly didn't say a whole lot about why it was agreeing with the marshals recommendation but the record certainly contains enough information to support the need for at least this minimal amount of security. I mean this was not a defendant who had a violent history but it was a four-time convicted felon a gang member and someone who was in custody had been ordered detained by the court and who was about to take the stand in a very stressful situation to be cross-examined by the prosecutor the court would have been and was well within its discretion and allowing at least this. We don't know whether he'd ever acted out either in custody there at the courthouse. No there's no evidence of that. Or at the detention center or anything. That's correct. What's the evidence that he was a gang member? It's in the PSR that he and several of his convictions were gang-related. And was the trial judge aware of the gang membership at the time? I'm not sure it's not in the record your honor. Because the PSR of course doesn't come into him until later. Correct. At the very least he was a four-time convicted felon about to take the stand in a highly stressful situation and the nature of the courtroom setup is it is about 20 feet from where the marshals would normally sit so the jury is right next to where he would be testifying he's right next to the court and the situation it's certainly not illogical or implausible for the court to allow a single plainclothes marshal to sit at some distance from the defendant in between him and the jury. How about following him? That strikes me as odd actually. Again he wasn't the court assured before he went forward that the marshal was not going to be touching him he was not going to be really physically escorting him he walked as the court said approximately 10 feet behind him for the 20 feet before he got back to the counsel table and then afterwards the court made a specific finding that it did not that it was unobtrusive and it did not appear that the jury. And the jury witnessed all of this? They did yes your honor. As I understood it when he began testifying he was already in the chair in the witness chair. Correct. This was after he was done that he was followed back to counsel table. Yes. But again given the abuse of discretion standard and the district court's responsibility to maintain the security in their own courtroom this this particular security arrangement falls within that discretion. Do you think this is in any way prejudicial to him? Based on what the district court said this was so unobtrusive that the court that the jury would not have even noticed it at that the defense has not even argued how this would cause actual prejudice particularly in light of the other evidence in this case that the defendant knowingly came in. Did the jury know that he was already in custody? Well the jury knew that he was an illegal alien. No but did they know he was in custody at the time of the trial? I mean it wouldn't we no one would have ever said that explicitly I think it would be fairly obvious as the Supreme Court said in Holbrook versus Flynn that the jurors know that the defendant appearing before them is not there by choice or by happenstance. There's some amount of security procedures that even if as the court held if they tend to single out the accused from everyone else in the courtroom there is some level of security below that of shackling below that of prison clothes that falls within the district court's discretion. We would submit that this practice here was even less noticeable or egregious than other practices that this court has affirmed including multiple uniformed officers in the courtroom and other visible signs that the defendant is in custody. Could you move on to the silence issue? Yes your honors. There's essentially three time periods that are at issue in this case. There's the time period before the defendant was arrested when he first encountered Agent Fudge and Field. There's the time period after his Miranda rights when he agreed to make a statement and then there's a sort of two-hour window in between the two. Defense's first argument is that that the prosecutor was actually commenting on this two-hour window in between but there's nothing in the record to suggest that that's what the prosecutor was saying. The prosecutor said he never, right, never covers the entire period. Well he said he said never and then he immediately followed that by saying here's what he said to Agent Fudge, here's what he said when he was arrested when he was after his Miranda interviews. But he didn't retract and say oh I meant only da da da. He said never. He did but he went on to say more things. Yes your honor but that two-hour window never was never discussed by either party. There was no evidence elicited from any witness about that two-hour period except for I think there was one question on redirect of the defendant himself where the defense counsel asked how long did you wait before you were interviewed. But that idea that two-hour window was somehow a time when he should have been speaking or that that's the prosecutor was somehow secretly commenting on that when he said ever, that's just simply not argument that the prosecutor was improperly commenting on his silence post-Miranda. The defendant did not invoke his right to remain silent and he spoke and he gave a story that was inconsistent with what he told the agents after his arrest. How inconsistent was it? His story is that he had all this interaction, the flat tire that wasn't very flat, afraid of these people. When he comes up to the border he sees the guy who'd asked about the flat tire talking on the telephone. He jumps over the fence from Mexico into Mexico but then walks across that sort of vacant lot and so on. For him to say that I was afraid of them and they were chasing me, I don't see that that's inconsistent. It's an elaboration of course. I think first of all the the standard is whether it's even arguably inconsistent. Once the defendant waves his Miranda rights and talks. It's just a question whether it's arguably inconsistent and I think that it is in this case for two reasons. One, when the defendant was interviewed post arrest he said that he was being chased when he came into the United States. That is different from the testimony he gave on the stand. On the stand he didn't say he was being chased. He gave this sort of elaborate day-long story about running into the same three people three times and essentially said he felt uneasy when he saw this person on the bike for the third time and decided to come into the United States. That's different from being chased by someone across the border and secondly when he was interviewed post arrest he said that he was he didn't know who the person that was chasing him and then when he the stand he gave again a long story about he never testified that he knew the names of these people. No your honor but I don't know right I mean he could say I could recognize them but I don't know their names but that's not inconsistent with saying I don't know them. Your honor I think this court's decision in Makaluta the court said it's permissible to use inconsistencies between the post-arrest statement and the testimony on the stand even when the inconsistency includes failure to provide critical details. At the very least that's what the defendant did here. A one-word response or a two-word response that I was being chased is very different from this long elaborate story about running into the same guy on a bicycle three times and feeling uneasy. Given that at least arguable inconsistency that this was fair examination and for comment during closing argument. What about harmlessness? If this was an error then it would still be harmless in the context of this case your honor. But harmless beyond a reasonable doubt right? Yes harmless beyond a reasonable doubt. I think there's two main pieces of evidence in this case that the jury saw that that showed beyond a reasonable doubt that this defendant was not coming into the United States because he was fleeing and was trying to be arrested. First was the video evidence which was directly inconsistent with what he was saying. It showed him sort of casually walking along the edge of a of the border fence climbing over an interior fence and then walking through the pedestrian lanes which are the vehicle lanes which is not consistent with this idea of sort of importantly when he first confronted. But I gather there was some testimony that he was jogging. I'm not sure how much testimony about running but he was jogging. Yes although you can watch the video I submitted to the court. He's walking at a normal pace before that point. And then secondly when he first encountered Agent Fudge he didn't not only didn't say I want to be arrested he moved around the vehicle and continued on into the United States and only stopped at that point and said he was being chased. And then thirdly the defendant's story that he gave on the stand was not believable. It was sort of a bizarre rambling story involving running into the same people on multiple locations around Mexicali running for three miles to the border somehow happening to see the same person on the bicycle at the same dirt lot where he ultimately climbed over the the fence. So all of the evidence in this case supported the jury's conclusion that this defendant knowing who came into the United States not to be arrested but to come see his family as he admitted in his post arrest statement. So for that reason even if it is Doyle error we would argue that it's harmless. Thank you. Why don't we put two minutes on the clock? I want to make sure you get enough time. Thank you your honor. First with regard to kind of picking up where I left off with regard to the Fifth Amendment error I think the the statements were not inconsistent in my view either. He said he was being chased and then he provided more details when he had an opportunity to. But even if the court found that the statements were inconsistent the prosecutor didn't limit his comments to the perceived inconsistencies between the statements and instead he did something that is impermissible but under under Carrudo and under Ochoa Sanchez that he was inviting the jury to draw meaning from the silence and not to simply point out that he had said something different before. When I looked at Carrudo it was talking about doing that at in the context of a person that in the middle of a statement invoked their right to an I think that person requested an attorney. Here there was never in any invocation of Miranda as I understood the statement or as I watched it or listened to it. Two points there your honor. First Carrudo did rely in part on Miss Carrudo's indication but that wasn't the only analysis that was done. What it said was is the prosecutor trying to draw meaning from the silence or simply explaining a prior inconsistent statement. The prosecutor in Carrudo could have tried to just have prior impeach based on prior and inconsistent statements but instead took it a step farther to talk about what wasn't said. She did invoke but that wasn't the only form of analysis and that this court went into. But then second Miss Carrudo gave a statement of between five and seven minutes before she invoked. Her pre-invocation statement is longer than Mr. Vasquez's entire statement. His entire statement was just over five minutes long. Almost all leading questions and he provided simple one-word answers to the questions. He's not under any obligation to answer complete answers or to provide additional details. He answered the questions that were asked of him. I thought the last question was is there anything else you want to say and he said essentially no. No but he also then to kind of lead into something that Mr. Vasquez said, that opposing counsel just said, is that he said he admitted that he wanted to see his children and that was something that was explained as the stand to that his mom was coming down to May Cali at that time that he was arrested. Regardless though we need to, the Doyle error, the Fifth Amendment error is clear based on even the one statement based on the bulk of the evidence but even the one statement that ever and never language. That under harmlessness though we need to look at the entire statements, the entire cross-examination, the entire closing argument and although there are other as other evidence referenced now, that wasn't the bulk of what the trial prosecutor thought was the most important thing and he said it twice. The most important thing was what Mr. Vasquez did not say and that is where the harmless, the government cannot prove harmlessness beyond a reasonable doubt. Thank you. I think both
judges: W. Fletcher, Paez, Gleason